JACOB S. ANDRESS, appellant,

*v.*

RODERICK B. ANDRESS, respondent.

1. A person aggrieved by a decree of the orphans court is one whose pecuniary interest is directly affected by the decree; one whose right of property may be established or divested by the decree.

2. Any one entitled to a part of the surplus of an intestate's estate may appeal from the order allowing commissions, for the order, if erroneous, depletes the distributable surplus, and thus injuriously affects his interest.

3. Commissions must, where a difference arises, be divided among two or more administrators according to the amount of service each has rendered, and service, in this connection, means, according to the statute, pains, trouble and risk.

On appeal from an order of the orphans court of the county of Warren.

*Mr. William H. Morrow,* for the appellant.

*Mr. L. DeWitt Taylor* and *Mr. J. G. Shipman,* for the respondent.

THE VICE-ORDINARY.

The principal parties to the appeal in this case are the administrators of Joseph Andress, deceased. The appeal presents two questions—*first,* were the commissions allowed excessive? and, *second,* was the respondent awarded more than his just proportion of them? The appellant contends that both of these questions should be answered in the affirmative. They exhibit the grounds of his appeal.

The amount allowed for commissions is, in my judgment, excessive. The period covered by the administration was less than fourteen months. Letters of administration were ordered to be issued on the 2d day of September, 1887, and the account of the accounting administrator (the appellant) was filed on the 15th day of October, 1888. Commissions, at the rate of four per cent., were allowed on a sum slightly in excess of $107,500, amounting to a trifle in excess of $4,300. The principal part of the estate consisted of securities, which were never collected or converted into money, but were distributed, in specie, to the next of kin before the filing of the account. The evidence does not show, with certainty, just how much was thus distributed in specie—the accounting administrator, at first said, in giving his evidence, that about $66,000 had been assigned in securities to the next of kin, and then that twenty shares of bank stock had also been assigned, and, lastly, that $76,000 in bonds and mortgages had been distributed—but the general tenor of the proofs goes to show that nearly the whole estate distributed to the next of kin was passed over in securities held by the intestate at the time of his death. All that was done in the administration of that part of the estate, which was thus distributed, was to keep the securities safely, in a secure place, collect their income, and

34

make a just division of them into six shares, and pass them over to the next of kin. That was all the pains and trouble bestowed and all the risk sustained. And those are the three things which regulate the allowance of commissions rather than the *quantum* of the estate. *Rev. p. 776 § 109.* The estate was an easy one to settle. Its administration required very little skill, not much time and was attended with scarcely any risk. It was almost entirely free from complications or difficulties of any kind. The appellant bestowed all the care on the safe-keeping of the securities that was bestowed. They were in his possession, in a safe belonging to the intestate and himself, when the intestate died, and remained there, with the consent of the respondent, up until distribution was made to the next of kin. How long the appellant had the care of them and was subject to the risk incident to their custody, does not appear. It is not necessary that it should, for he is the person who complains that the sum allowed for commissions is excessive, and, in proof of his sincerity, he agrees, in case a reduction is made, to waive his part of the excess, whatever it may be. Looking at the *quantum* of the estate, of what it consisted, at the risk its administration involved, and the time, care and skill required in its settlement, my judgment is, that $3,000 will fully compensate the administrators for all the pains and trouble they bestowed and all the risk they sustained.

But it is said, suppose the amount allowed for commissions is excessive, the appellant has no right to complain—he is not thereby aggrieved, and it is only a person aggrieved by an order, sentence or decree of the orphans court who may appeal therefrom to this court. The appellant is one of the next of kin of the intestate, and so is the respondent. They occupy a dual position towards the estate; they are its administrators and also two of the next of kin. A person aggrieved has been defined to be one whose pecuniary interest is directly affected by the decree; one whose right of property may be established or divested by the decree. *Swackhamer* v. *Kline's Admr., 10 C. E. Gr. 503, 505; Parker* v. *Reynolds, 5 Stew. Eq. 290, 293.* As to that part of the commissions which is in excess of the correct amount,

and which, if the order made below were allowed to stand, the appellant would himself receive, it would seem to be quite clear, that the order appealed from does the appellant no legal harm. He is not thereby aggrieved, but, on the contrary, he derives a benefit from it. If it be said that he will suffer a grievance in his capacity as one of the next of kin by the enforcement of the order, the answer is, that, although his part of such excess may be paid to him in his capacity as administrator, the money which he will receive, will, nevertheless, go to him for his personal benefit and will become his property as an individual. Besides, it is plain, that he will receive more money as commissions than he would be entitled to if his part of the excess was distributed to the next of kin as part of the surplus. So far, then, as the order awards him part of the excess, I think it is clear, that he is not aggrieved by it. Not so, however, as to that part of the excess which the order awards to his co-administrator. The order declares that the commissions shall be divided equally, so that its effect is to take from the appellant and the other next of kin one-half of the excess—to deplete the distributable surplus to just that extent—and give it all to the respondent. It is plain, then, that the order, if erroneous, injuriously affects the pecuniary interest of the appellant. It takes money which he is entitled to, as one of the next of kin of the intestate, and gives it to a person who is not entitled to it. There can be no doubt that an order which thus affects the rights of a person, aggrieves him, and that the grievance which he suffers by it gives him a right to appeal from it. My conclusion is, that the appellant occupies a position giving him a right to have the allowance of commissions reviewed, and also, that the commissions should be reduced from the sum allowed to $3,000.

The orphans court divided the commissions equally. The appellant complains of this method of division as unfair to him, and, I think, justly. The rule prescribed by the statute on this subject is, that where any difference arises between administrators as to the proportions in which commissions shall be divided, the court shall determine the same, having regard to their respective services. *Rev. p. 776 § 112.* The plain direction of

·the statute is, that each shall be paid according to the amount of services he has rendered. And construing the word services, here used, in connection with the statute regulating the allowance of commissions, it would seem, that it should be held to mean pains, trouble and risk. Adopting this as the rule by which the division must be made in this case, it appears to be plain, beyond question, that a division by equal shares would be unjust to the appellant. He did the principal part of the work of administration. He collected all the money that was collected except about $1,000; made all the settlements and payments; took all the vouchers; kept the accounts; had the care of the securities, and he alone has accounted for the estate before the orphans court. The respondent does not pretend to have done much service. He says, he went around quite a good deal with the appellant in settling up, collected several accounts, and made three or four journeys on business of the estate to Newton, Sussex county. It also appears that he assisted in dividing the securities among the next of kin, and also that he joined in executing transfers of them. One thousand dollars will, in my judgment, fully compensate him for all the pains and trouble he bestowed and all the risk he sustained in the administration of the estate. The commissions will be divided as follows: $2,000 to the appellant and $1,000 to the respondent.

The claim that the appellant deprived himself of the right of appealing from the order dividing the commissions, by consenting to a division by equal shares, is not sustained by the proofs. Indeed, the proofs so entirely fail to show that that part of the order was made by consent, that I have not thought it necessary to examine the question, whether evidence *aliunde* the order, and consisting entirely of the recollection of witnesses, is competent to prove the fact that the order was made by consent.

For the reasons stated orally on the hearing, that part of the order brought up for review which allows counsel fees to the counsel of the respondent, will be affirmed.

No costs or counsel fees will be allowed in this court to either party as against the other. Each must pay his own costs and counsel fees.